```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**LEXINGTON**

```
CLAUDE L. BASSETT,                )
                                  )
     Plaintiff,                   )   Civil Action No. 5:04-425-JMH
                                  )
v.                                )
                                  )
THE NATIONAL COLLEGIATE           )
ATHLETIC ASSOCIATION, THE         )
SOUTHEASTERN CONFERENCE, and      )   MEMORANDUM OPINION AND ORDER
THE UNIVERSITY OF KENTUCKY        )
ATHLETIC ASSOCIATION,             )
                                  )
     Defendants.                  )
                                  )
                                  )
```

                    **      **      **      **      **

This matter is before the Court on Defendants' motions to dismiss [Record Nos. 5, 7, and 9 respectively]. Plaintiff filed an omnibus memorandum in response to Defendants' motions to dismiss [Record No. 22/23], and each of the Defendants have replied [Record Nos. 31, 32, and 33 respectively]. Accordingly, this matter is now ripe for decision.

**FACTUAL BACKGROUND**

Plaintiff, Claude Bassett ("Bassett"), resigned from his position as assistant coach/recruiting coordinator for the University of Kentucky football team on November 19, 2000. He was employed by the University of Kentucky Athletic Association ("UKAA"). The catalyst for Bassett's resignation were allegations of impropriety relating to alleged National Collegiate Athletic

1

Association ("NCAA") Rules violations.

On November 19, 2000, the University of Kentucky's Athletic Director, Larry Ivy, confronted Coach Bassett with allegations of impropriety. At the end of the meeting, Ivy gave Bassett a choice: (a) resign and, in exchange, no further action would be taken on the allegations made against him, or (b) face an investigation, potential criminal prosecution, and sure dismissal. In his complaint, Bassett claims he resigned believing that his resignation would end any further inquiry into his conduct and avoid the scandal that ultimately ensued. In resigning, Bassett asserts that he lost the due process protections enjoyed by athletics department employees subject to disciplinary action. Bassett claims that, had he known the University of Kentucky ("UK") would initiate a NCAA inquiry, he never would have resigned.

The day after Bassett's resignation, on November 20, 2000, UK publicly disclosed that Bassett, along with several other assistants in the football program, had been fired. That day, UK made the decision to conduct an internal investigation of its football program for possible NCAA Rules violations. UK notified the NCAA Enforcement Services of the dismissals and of its intent to investigate. With the assistance of the Southeastern Conference ("SEC") Commissioner, UK undertook an investigation that lasted through February 2001. Meanwhile, through counsel, Bassett contacted the UK Compliance Officer, Sandy Bell ("Bell"),

requesting that a meeting be arranged between Bassett and UK officials to discuss the allegations against him. This request was declined.

On January 4, 2001, Coach Bassett was interviewed; present were Bell, SEC Commissioner Roy Kramer, and SEC investigator Bill Seviers. Bassett consented to the request that his interview be tape-recorded. Bassett claims he was assured a copy of the tape. At the end of the first day, Bassett was told that, pursuant to NCAA Rules, he had a 24-hour window to reconsider his responses and submit to another interview to correct any discrepancies. The next day, January 5, 2001, Bassett returned to correct his prior testimony, again allowing his interview to be tape-recorded.

Bassett claims that when he tried to obtain his interview tape UK Compliance Officer, Bell, disputed ever having promised him a copy. Moreover, Bassett claims Bell indicated to him that all taped interviews of witnesses were solely in the SEC's possession. When Bassett requested the SEC provide him with a copy of his taped interview, the SEC said they would make the tape available to him at a law firm located in Lexington, Kentucky. Bassett claims that, due to his limited resources, sending his counsel to Lexington, Kentucky to listen to a tape was a "luxury he could not afford."

On February 28, 2001, UK submitted the results of its internal investigation to the NCAA enforcement staff. In response, on March 30, 2001, the NCAA forwarded a preliminary inquiry to UK. NCAA

3

enforcement staff later issued letters of official inquiry to Bassett, UK, and former head football coach Hal Mumme. Bassett's counsel responded to the allegations contained in the official inquiry by letter dated October 12, 2001. The letter stated that,

> [b]ecause of financial constraints, Coach Bassett will be unable to appear before the NCAA Division I Committee on Infractions during its November 16-18, 2001 meeting when this matter will be considered. This letter will, hence, be his only response to the allegations barring any further NCAA inquiry with new allegations or request for additional explanation or information.

The NCAA released its Infractions Report on January 31, 2002. UK appealed one of the penalties imposed by the NCAA Division I Committee on Infractions - the imposition of a ban on post-season competition by the UK football team following the 2002 season - to the NCAA Division I Infractions Appeals Committee. On September 7, 2002, the Appeals Committee concluded that the ban was not excessive or inappropriate and affirmed the penalties imposed by the Committee on Infractions.

More than two years later, on September 17, 2004, Bassett filed a complaint against the NCAA, the SEC, and the UKAA alleging antitrust violations, fraud, civil conspiracy, and tortious interference with prospective contractual relations.

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. Thus, under the liberal notice pleading rules, a complaint need only put a party on notice of the

4

claim being asserted against it to satisfy the federal rule requirement of stating a claim upon which relief can be granted. Fed. R. Civ. P. 8(a); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, (2002) (holding that a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations). A court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Cooper v. Parrish,* 203 F.3d 937, 944 (6th Cir. 2000). Construing the complaint in the light most favorable to the petitioner, dismissal is proper only if "it appears beyond doubt that the [petitioner] can prove no set of facts in support of [his] claims that would entitle [him] to relief." *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996) (*quoting American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 353 (6th Cir. 1990)).

UKAA and the SEC also argue that Plaintiff's fraud claim should be dismissed pursuant to Fed. R. Civ. P. 9(b) for failing to plead with the requisite particularity. The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-162 (6th Cir. 1993) (quotation omitted). While Rule 9(b) requires the circumstances constituting

5

fraud or mistake to be stated with particularity, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

## DISCUSSION

**I.  Count I:  Antitrust**

Bassett's first claim, and purported basis for jurisdiction in federal court, accuses the NCAA, the SEC, and the UKAA of conspiring to prevent him from coaching at any of the NCAA's member schools. This conspiracy, Bassett alleges, violates the Sherman Antitrust Act, 15 U.S.C. §1-2, and the Clayton Act, 15 U.S.C. §15, as it amounts to an unlawful group boycott.

Section 1 of the Sherman Act provides that, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.[1] While the statute says "every," the Supreme Court has long held that Congress intended to outlaw only "unreasonable" restraints. *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). The trade restraint alleged here is the group boycott of Bassett arising from NCAA imposed sanctions.

By its plain language, Section One of the Sherman Act only

---

[1] Section 4 of the Clayton Act creates a private cause of action for antitrust law violations and provides treble damages to any person "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15.

6

applies to the alleged antitrust violation if such violation is commercial in nature. *See Worldwide Basketball & Sport Tours, Inc. v. NCAA,* 388 F.3d 955, 958 (6th Cir. 2004). Bassett claims that the antitrust violation alleged here, the alleged conspiracy to prevent him from coaching at any of the NCAA's member schools, arises from the NCAA's imposed sanctions. It is undisputed that sanctions imposed on Bassett stemmed from the NCAA's enforcement of its rules governing recruiting, improper inducements, and academic fraud. Thus, in order for Section One of the Sherman Act to apply, the NCAA enforcement program, and the imposed sanctions arising therefrom, must be commercial in nature.

Some NCAA rules have been held to be commercial in nature and thus subject to antitrust scrutiny. *See Worldwide Basketball,* 388 F.3d 955 (6th Cir. 2004) (finding that the NCAA's Two in Four rule is commercial in nature as it regulates games that constitute sources of revenue for both member schools and promoters); *National Collegiate Athletic Ass'n v. Board of Regents,* 468 U.S. 85, 98 (1984) (finding NCAA's rules restricting television coverage of intercollegiate football games violated the Sherman Act). Other NCAA rules, however, have been found to further the NCAA's noncommercial objectives; courts have held that the Sherman Act does not apply to these rules. *See Smith v. NCAA,* 139 F.3d 180, 186 (3d Cir. 1998) *vacated on other grounds by NCAA v. Smith,* 525 U.S. 459 (1999) (finding that the Sherman Act does not apply to the

7

NCAA's promulgation of eligibility requirements).

Like the NCAA's eligibility rules, enforcement of the rules at issue here is not within the purview of antitrust law as it is not related to the NCAA's commercial or business activities. Rather than intending to provide the NCAA or any of its member schools with a commercial advantage, enforcement of rules governing recruiting, improper inducements, and academic fraud "primarily seek[s] to ensure fair competition in intercollegiate athletics." *Id.* at 185. Because the NCAA's enforcement program is not commercial in nature, sanctions arising therefrom do not constitute an illegal group boycott.

Moreover, even if the defendants' actions were subject the Sherman Act, Bassett's allegation of an antitrust violation still fails to state a claim upon which relief can be granted as he has failed to allege an antitrust injury. To state a claim for an antitrust violation, a plaintiff must allege an antitrust injury in his complaint. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). An "antitrust injury" is an (1) "injury of the type the antitrust laws were intended to prevent" and an (2) injury "that flows from that which makes defendants' acts unlawful." *Id.* Because the purpose of the antitrust laws is to protect competition rather than competitors, a plaintiff must allege injury, not only to himself, but to a relevant market. *See Banks v. National Collegiate Athletic Ass'n,* 977 F.2d 1081, 1087

8

(7th Cir. 1992); *Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962). Thus, failure to allege an anti-competitive impact on a relevant market amounts to a failure to allege an antitrust injury. *Id.*

Bassett asserts, both in his complaint and in his response brief, that an alleged denial of due process caused him to be unjustly punished and that this amounts to an antitrust injury. The Court disagrees. At best, Bassett alleges injury to himself as a competitor in the marketplace and not an injury to competition in a relevant market. Bassett's complaint fails to allege any anticompetitive effect on an identifiable market as a result of his being "banned" from coaching at NCAA schools. It is clear that the complaint alleges harm only to Bassett and not to competition itself. While, Bassett's response brief states that unjustified bans hurt competition among college football teams and create a competitive imbalance, he has not alleged any decrease in the supply or quality of coaching services, increase in the cost of coaching services, or any harm to consumers resulting from his punishment. In essence, he has not alleged *how* the college football coaching market, or the college football market, have suffered any anticompetitive effect by the application of facially neutral disciplinary rules. Bassett's conclusory allegations of an antitrust injury - unsupported by any factual allegations that resemble a cognizable antitrust claim - are insufficient.

9

In conclusion, the Court finds that Bassett's antitrust count must be dismissed for failure to state a claim on which relief can be granted.

## II.  Count II:  Fraud and Civil Conspiracy

Count II of Plaintiff's complaint alleges that the three defendants engaged in fraud and civil conspiracy, precluding him from rejoining the college coaching ranks.  Specifically, it alleges that UKAA and SEC employees lied to Bassett in an effort to encourage him to take actions that would, and did, deprive him of certain due process guarantees, and that the NCAA relied upon knowingly tainted evidence to ban Bassett from college coaching. Defendants' assert that Bassett's complaint fails to allege facts sufficient to support these causes of action.

### A.  Fraud

A viable fraud claim under Kentucky law requires that the defendant (a) made a material misrepresentation; (b) which was false; (c) which was known to be false or made recklessly; (d) which was made with inducement to be acted upon; (e) which plaintiff acted in reliance upon; and (f) which caused plaintiff injury.  *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003).  In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable

10

legal theory." *Glassner v. R.J. Reynolds Tobacco Co.,* 223 F.3d 343, 346 (6th Cir. 2000) (*quoting Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)). Furthermore, under Fed. R. Civ. P. 9(b), "a complaint alleging fraud must allege with particularity those circumstances constituting fraud." Glassner v. R.J. Reynolds Tobacco Co., 223 F.3d 343, 346 (6th Cir. 2000) (*citing VanDenBroeck v. CommonPoint Mortg. Co.,* 210 F.3d 696, 701 (6th Cir. 2000)).

1. <u>NCAA</u>

The Court will first address the fraud claim as it applies to the NCAA. Simply, as a matter of law, Bassett's complaint fails to state a viable claim of fraud against the NCAA. None of the statements present in Bassett's complaint can possibly be construed as alleging one, much less all six, of the elements required under Kentucky law to state a cause of action for fraud against the NCAA. Bassett does not allege that the NCAA lied to him or that he acted in reliance upon any misrepresentation made by the NCAA. Moreover, in his response to the Defendants' motions to dismiss, Bassett admits that his fraud claim focuses primarily upon the UKAA and the SEC. His claim of fraud against the NCAA consists only of an allegation that the NCAA relied on a distorted record to impose punishment. This allegation, on its own, is clearly insufficient to withstand the NCAA's Fed. R. Civ. P. 12(b)(6) motion to dismiss.

2. <u>SEC</u>

Bassett's fraud claim against the SEC also fails. Bassett claims that the Defendants' fraudulent conduct encouraged him to take actions that deprived him of due process protections to which he was entitled as an employee of the UKAA, which, in turn, resulted in a disproportionate punishment. Assuming these allegations are true, which the Court must at this stage of the litigation, Bassett's complaint simply does not allege that the SEC caused any of his injuries. Bassett makes clear that his resignation is what led to his loss of due process protections. Bassett's complaint, however, does not allege that the SEC had any role in his resignation. Without allegations that the SEC had a role in the conduct causing Plaintiff his only alleged injuries, no fraud claim against the SEC can stand.

3. <u>UKAA</u>

Finally, the Court turns to Bassett's fraud claim as it applies to the UKAA. Bassett alleges that on November 19, 2000, acting on behalf of the UKAA, University of Kentucky Athletic Director Larry Ivy informed him that, if he resigned, no NCAA investigation would ensue. Bassett claims that, in reliance on this representation, he resigned and, in so doing, gave up his due process rights as a UKAA employee. Bassett seems to take the position that, as a result of this alleged fraud, he received an unjust punishment from the NCAA. These allegations set forth the

elements required to state a common law fraud claim under Kentucky law.

The UKAA argues that, regardless of whether Bassett's complaint alleges the elements necessary to state a claim for fraud, his complaint must still be dismissed pursuant to Fed. R. Civ. P. 19(b), failure and inability to join an indispensable but immune party, to wit, the University of Kentucky. Rule 19 provides a three-part test. First, the Court determines whether a party should be joined (*i.e.,* whether the party is necessary under Rule 19(a)). If so, the Court asks whether joinder is feasible. If it is, the party is to be joined. If not, the Court determines under Rule 19(b) whether "in equity and good conscience," the action should continue without him or be dismissed (*i.e.,* whether the party is indispensable).

As it applies to the case *sub judice*, Rule 19(a) states that a person is "necessary" and should be joined as a party if, "in the person's absence complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a)(1). Bassett claims that Ivy, acting on behalf of the UKAA, made a material misrepresentation upon which Bassett detrimentally relied. Accordingly, the wrong, if any, was committed by Ivy acting on behalf of Bassett's employer, the UKAA. If Bassett's fraud claim involves the University of Kentucky, it does so only tangentially as Bassett seeks nothing from the University. Thus, the UKAA has

13

failed to show that, in the University's absence, complete relief cannot be accorded among those already parties.

In the alternative, Defendant UKAA argues that the University of Kentucky is a necessary party because disposition of the case in the University's absence may impair or impede the University's ability to protect its interest. See Fed. R. Civ. P. 19(a)(2). The University, however, has not claimed an interest relating to the subject matter of the action *sub judice*. A party is not "necessary" where it has not claimed an interest in the outcome of an action and complete relief can be ordered in its absence. *Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.,* 968 F.2d 1463, 1472 (1st Cir. 1992).

Because the University of Kentucky is not a "necessary" party under Fed. R. Civ. P 19(a), Defendant's motion to dismiss based on Fed. R. Civ. P. 19(b) fails.

**B.   Civil Conspiracy**

A viable cause of action for civil conspiracy requires that a plaintiff prove "an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *James v. Wilson,* 95 S.W.3d 875, 897 (Ky. Ct. App. 2002) (*citing Montgomery v. Milam,* 910 S.W.2d 237, 239 (Ky. 1995)).

Bassett's complaint accuses the NCAA of fraud not as a primary actor, but as a coconspirator. Assuming Bassett's complaint

14

alleges facts necessary to state a claim of civil conspiracy, it still must be dismissed on the grounds that it is barred by the applicable statute of limitations. KRS 413.140(1)(c) prescribes a one-year statute of limitations for civil conspiracy. This statute begins to run at the commission of the last act in furtherance of the conspiracy. *District Union Local 227 v. Fleischaker,* 384 S.W.2d 68 (Ky. Ct. App. 1964). Construing the complaint in the light most favorable to Bassett, the latest possible date of any act in furtherance of the alleged conspiracy was September 17, 2002, when the NCAA Infraction Appeals Committee issued its report and upheld the sanctions imposed by the Infractions Committee. Plaintiff, however, did not file his complaint until September 17, 2004, more than two years after the last alleged act. Accordingly, Bassett's claim for civil conspiracy is time-barred and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In Bassett's response to NCAA's motion to dismiss, he claims that the NCAA may also have liability for aiding and abetting. Nowhere in the complaint, however, is there any allegation of aider and abettor liability. Because it was not plead, the Court will not engage in a legal analysis of liability under this theory of law.

### III. Count III: Tortious Interference

The Court now turns to Bassett's state law claim of tortious

15

interference with prospective contractual relations. Bassett claims that the NCAA intentionally and improperly interfered with his prospective contractual relations insofar as it forbid NCAA member institutions from hiring him.

Kentucky law recognizes the tort of intentional interference with contractual relations as articulated in the Restatement (Second) of Torts § 766B:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

*Cullen v. South East Coal Co.,* 685 S.W.2d 187, 189-90 (Ky. Ct. App. 1983). Thus, to set forth a cognizable claim under this theory, Bassett must allege that the NCAA intentionally and improperly interfered with his prospective contractual relations. Bassett's complaint does this; it clearly states that, by forbidding its member institutions from hiring him, the NCAA intentionally and improperly interfered with Bassett's prospective contractual relations.

The NCAA sets forth many persuasive arguments in its motion to dismiss. Such arguments, however, are more properly geared toward

16

a motion for summary judgment. At this time, the Court cannot dismiss Bassett's claim against the NCAA for intentional interference with his prospective contractual relations as he has alleged facts sufficient to support such a claim.

## CONCLUSION

Assuming as true the allegations set forth in Plaintiff's complaint,

**IT IS ORDERED,**

(1) that UKAA's motion to dismiss [Record No. 5] be, and the same hereby is, **GRANTED IN PART and DENIED IN PART;**

(2) that Bassett's claim of fraud, found in Count II of his compliant, as it applies to the UKAA, survives the UKAA's motion to dismiss;

(2) that NCAA's, motion to dismiss [Record No. 7] be, and the same hereby is, **GRANTED IN PART and DENIED IN PART;**

(3) that Count III of Bassett's complaint - tortious interference with prospective contractual relations - survives NCAA's motion to dismiss;

(4) that SEC's motion to dismiss [Record No. 9] be, and the same hereby is, **GRANTED.**

This the 3rd day of May, 2005.



**Signed By:**

*Joseph M. Hood*

**United States District Judge**